**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000071
02-FEB-2018
09:28 AM**

NO. CAAP-15-0000071

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
ZARA T.L. BARAWIS, Defendant-Appellant

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(FC-CR. NO. 14-1-0189K)

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Fujise and Leonard, JJ.)

Plaintiff-Appellee State of Hawai'i (State) charged Defendant-Appellant Zara T.L. Barawis (Barawis) with abuse of a family or household member, in violation of Hawaii Revised Statutes (HRS) § 709-906(1) (2014)[1]. Barawis is the aunt of the complaining witness (CW), who was about eleven years old at the time of the charged incident. The CW's mother (Mother) had left the CW with the CW's grandmother (Grandmother) at Grandmother's residence before Mother went to work. Grandmother asked Barawis to watch the CW at Grandmother's residence while Grandmother went out on an errand. Barawis and the CW got into an argument, and Barawis allegedly physically abused the CW while Grandmother was away.

---

[1] HRS § 709-906(1) provides, in relevant part, that "[i]t shall be unlawful for any person, singly or in concert, to physically abuse a family or household member . . . ."

After a jury-waived bench trial, the Family Court of the Third Circuit (Family Court)[2] found Barawis guilty as charged. The record indicates that in rendering its verdict, the Family Court did not consider the justification defense under HRS § 703-309(1) (2014),[3] commonly referred to as the "parental discipline defense," because the Family Court determined that this defense was inapplicable as a matter of law. The Family Court sentenced Barawis to thirty days of imprisonment, with twenty-eight days suspended,[4] as a special condition of a two-year term of probation.

On appeal, Barawis argues that: (1) the Family Court erred in concluding that she failed to produce sufficient

---

[2] The Honorable Margaret K. Masunaga presided.

[3] HRS § 703-309(1) provides:

The use of force upon or toward the person of another is justifiable under the following circumstances:

(1) The actor is the parent, guardian, or other person similarly responsible for the general care and supervision of a minor, or a person acting at the request of the parent, guardian, or other responsible person, and:

(a) The force is employed with due regard for the age and size of the minor and is reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct; provided that there shall be a rebuttable presumption that the following types of force are not justifiable for purposes of this [paragraph]: throwing, kicking, burning, biting, cutting, striking with a closed fist, shaking a minor under three years of age, interfering with breathing, or threatening with a deadly weapon; and

(b) The force used does not intentionally, knowingly, recklessly, or negligently create a risk of causing substantial bodily injury, disfigurement, extreme pain or mental distress, or neurological damage.

(Brackets in original.)

[4] For a first offense, a defendant convicted of abuse of a family or household member is required to serve a minimum jail sentence of forty-eight hours. HRS § 709-906(5)(a) (2014).

2

evidence to invoke the parental discipline defense; (2) the State failed to present sufficient evidence to negate her parental discipline defense; and (3) the Family Court erred in excluding certain evidence of household rules that she claims was relevant to her parental discipline defense. As explained below, we conclude that the Family Court erred in failing to consider the parental discipline defense; that there was sufficient evidence to negate the parental discipline defense if it had been considered by the Family Court; and that we need not address whether the Family Court erred in excluding certain evidence of household rules. We therefore vacate Barawis' conviction and remand the case for a new trial.

BACKGROUND

The charge in this case arises in circumstances that are somewhat unusual. The following evidence was adduced at trial.

Barawis and Mother are sisters. At one time, Barawis and Mother apparently had a good relationship. However, their relationship soured about two years before the charged incident, which occurred in June 2014. Prior to their relationship turning bad, for a period of four or five years, when the CW was between four and nine years old, Barawis watched the CW quite often, "maybe couple times a week." In 2012, Mother and the CW lived with Barawis at Barawis' house "for about a year." The bad relationship between Mother and Barawis began because Barawis "kicked [Mother] out of [Barawis'] house."

Grandmother had "no idea" that Mother and Barawis were not getting along. Prior to the charged incident, Mother never told Grandmother that Mother did not want Barawis to watch the CW. The CW was eleven years old at the time of trial, and the charged incident occurred six months before trial.

I.

Mother testified that on June 20, 2014, she left the CW at Grandmother's residence for Grandmother "to supervise" while Mother went to work. Barawis "took over" this responsibility

3

when Grandmother left to run an errand.  Mother did not ask Barawis to watch the CW, and Mother was not aware that Barawis would be supervising the CW.

The CW testified that while Barawis was watching her, Barawis started saying things about Mother, such as "[Mother] was a loser."  This made the CW angry, and the CW responded by swearing at Barawis, calling Barawis "a dumb bitch," among other things.  According to the CW, Barawis, in response, came over and hit the CW two times with a fist on the top of the CW's head.[5] Barawis also took away the CW's cell phone, told the CW she did not "deserve a phone," and broke the phone by "slamm[ing] it on the ground."  Barawis had previously purchased the cell phone for the CW as a Christmas gift.  The CW stated that her head hurt after Barawis hit her, and she had a bump on her head in the location where Barawis had struck her.

The CW ran to a bedroom and locked the door.  When Grandmother returned home, the CW used Grandmother's phone to call Mother and told Mother what had happened.  Mother picked up the CW from Grandmother's residence, and Mother felt "a couple of bumps" on the CW's head.  Mother left the CW with Mother's sister-in-law and went back to work.  After work, Mother took the CW to the police station to make a report of the incident. At the station, Officer Bruce Parayno felt the CW's head for injuries, but "couldn't really feel anything."

II.

Barawis testified in her own defense.  According to Barawis, on the morning of the incident, Grandmother came to Barawis' house, and they drove separately to an automotive shop so that Barawis' car could be repaired.  Grandmother had a baby with her,[6] whom Grandmother was apparently caring for that day.

---

[5] On cross-examination, the CW admitted that she did not know whether Barawis struck her with a closed fist or open hand because she "covered [her] face" when Barawis came towards her.

[6] Barawis stated that the baby was her brother's one-year-old baby.

After the repairs to Barawis' car were completed, Grandmother and Barawis each drove to Grandmother's residence, arriving at about 9:00 a.m. When they arrived at Grandmother's home, Grandmother was surprised to see that the CW was there. Grandmother wanted to run an errand, so she asked Barawis to watch over the CW and the baby. There was no other adult present at Grandmother's residence at that time.

Barawis testified that after Grandmother left, the CW immediately began calling Barawis names. The CW said Barawis was "evil" and told Barawis that she was "so ugly, and [she was] a dumb, fat, . . . [a] fat bitch." Barawis initially tried to ignore the CW's taunts. However, when the CW continued calling Barawis names, Barawis decided to take away the CW's cell phone, which Barawis had previously bought for the CW. Barawis asked the CW to give her the cell phone, but the CW refused. The CW told Barawis that she had no right to take the phone and kept calling Barawis names. The CW resisted Barawis' efforts to obtain the phone and kicked Barawis in the stomach as Barawis attempted to grab the phone. Eventually Barawis took the phone from the CW, but the CW grabbed the phone back and ran into a room. The CW tried to close the door, but Barawis was able to push the door open. The CW stuck her tongue at Barawis and ran out of the room. Barawis held the CW down, grabbed her hand, and tried to pry her fingers from the phone. As they struggled over the phone, it went up in the air and fell to the floor, cracking the phone's screen. The CW then began crying.

Around that time, Grandmother returned home. Barawis was "fed up already" with what had happened, so she left Grandmother's residence. Barawis denied punching the CW on the head during the incident.

III.

The Family Court found Barawis guilty as charged. Among other things, the Family Court found that the CW's and Mother's testimony was credible with respect to the physical pain and injury Barawis caused to the CW by hitting the CW's head with

a fist. The Family Court's findings further indicated that it determined that Barawis could not invoke the parental discipline defense as a matter of law. The Court stated:

> The Court also finds that [Mother] . . . did not give consent or permission for [Barawis] to exercise parental discipline over [the CW], which is [Mother's] daughter. [Mother] left her daughter with [Grandmother] while [Mother] went to work. And the parental-discipline defense does not apply.

The Family Court entered its Judgment on December 12, 2014, and this appeal followed.

DISCUSSION

I.

Barawis argues that the Family Court erred in concluding that she failed to produce sufficient evidence to invoke the parental discipline defense under HRS § 703-309(1). We agree.

Under HRS § 703-309(1), the category of people who are eligible to assert the parental discipline defense consists of "the parent, guardian, or other person similarly responsible for the general care and supervision of a minor, or a person acting at the request of the parent, guardian, or other responsible person." The record indicates, and we conclude, that the Family Court determined that Barawis was not eligible to assert this defense as a matter of law, and it therefore did not consider whether the force Barawis used was justifiable under this defense.[2]

---

[2] We reach this conclusion for the following reasons. The Family Court determined that the parental discipline defense was inapplicable based solely on its finding that Mother had not given Barawis permission to exercise parental control over the CW. The Family Court did not make any findings relating to whether the force used by Barawis was justifiable, an issue that one would expect the Family Court to address if it was considering the defense. In addition, the Family Court precluded defense counsel from asking the CW questions relating to rules of behavior that had been imposed on the CW. Such rules may have been relevant to whether the use of force was reasonable, especially where non-physical disciplinary alternatives had previously been used for a rule violation. See State v. Tanielu, 82 Hawai'i 373, 381, 922 P.2d 986, 994 (App. 1996). However, the Family Court explained its decision to sustain the State's relevance objection by stating that "[Barawis is] not the parent."

6

In determining that Barawis was not eligible to assert the defense, the Family Court focused on whether Barawis was the CW's parent, or a person acting at the request of the parent. However, the defense also applies to a person (other than a parent or guardian) "similarly responsible for the general care and supervision of a minor, or a person acting at the request of the . . . other responsible person." HRS § 703-309(1). The undisputed evidence shows that Barawis was watching the CW at the request of Grandmother. Thus, the pivotal question in this case is whether there was sufficient evidence that Grandmother qualified as a "similarly responsible" person to require the Family Court, as the trier of fact, to consider the defense.

Under the statutory language, to qualify as a "similarly responsible" person, the person would need to have parent-like responsibilities for the general care and supervision of the minor. Thus, someone who was only responsible for the care and supervision of a minor on a temporary or infrequent basis would not qualify as a similarly responsible person. In construing who qualifies as a similarly responsible person, we note that a different subsection of the same statute, HRS § 703-309(2) (2014), permits the reasonable use of force by a teacher against a minor where believed necessary to maintain reasonable discipline.[8] Reading the two sections *in pari materia*,[9] we

_____

[8] HRS § 703-309(2) provides:

The use of force upon or toward the person of another is justifiable under the following circumstances:

. . . .

(2)  The actor is a principal, the principal's agent, a teacher, or a person otherwise entrusted with the care or supervision for a special purpose of a minor, and:

(a)  The actor believes that the force used is necessary to further that special purpose, including maintenance of reasonable discipline in a school, class, other group, or at activities supervised by the department of education held on or off school property and that the use of force is consistent with the welfare of the minor; and

(continued...)

7

conclude that someone who routinely and regularly is responsible for the care and supervision of a minor, in a manner comparable to a teacher's responsibility for the care and supervision of a minor student, may qualify as a similarly responsible person under HRS § 703-309(1).

In this case, evidence was presented that Grandmother routinely and regularly was responsible for the care and supervision of the CW. On the day of the charged incident, Mother dropped the CW off at Grandmother's residence to have Grandmother care for and supervise the CW while Mother went to work that day. However, the evidence showed that Mother did not give Grandmother advance notice that Mother was leaving the CW with Grandmother, as Grandmother was surprised to see the CW when Grandmother returned home after accompanying Barawis to the automotive shop. It can be inferred, from Mother's action in leaving the CW with Grandmother and expecting Grandmother to care for and supervise the CW for an entire work day without advance notice, that Grandmother's caring for and supervising the CW was a regular, routine, and understood practice such that no advance notice was necessary.

Under Hawai'i precedents, a defendant is entitled to have the trier of fact consider a parental discipline defense "having any support in the evidence, no matter how weak, unsatisfactory or inconclusive" the evidence might be. State v. Kikuta, 125 Hawai'i 78, 90, 253 P.3d 639, 651 (2011). Here, we conclude that some evidence was presented that Grandmother may qualify as a similarly responsible person under HRS § 703-309(1) as well as evidence that the force employed by Barawis may have

_____

[8] (...continued)
    (b)    The degree of force, if it had been used by the parent or guardian of the minor, would not be unjustifiable under paragraph (1).

[9] HRS § 1-16 (2009) provides: "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another."

8

been justifiable. Accordingly, the Family Court, as trier of fact, was required to consider the parental discipline defense in rendering its verdict. We conclude that the Family Court erred in failing to consider the parental discipline defense and in ruling instead that the defense did not apply as a matter of law. For this reason, Barawis' conviction must be vacated.

II.

Barawis argues that the State failed to present sufficient evidence to negate her parental discipline defense. We disagree. When viewed in the light most favorable to the State, see State v. Tamura, 63 Haw. 636, 637, 633 P.2d 1115, 1117 (1981), there was sufficient evidence to negate the parental discipline defense if it had been considered by the Family Court.

The State presented evidence that Barawis punched the CW two times on the head with a fist, causing bumps to form on the CW's head. Viewing the trial evidence in the strongest light for the State, we conclude that a trier of fact could reasonably have concluded that Barawis' use of force was not "reasonably related to the purpose of safeguarding or promoting the welfare" of the CW. See HRS § 703-309(1). Accordingly, the State presented sufficient evidence to negate the parental discipline defense. Therefore, while we vacate Barawis' conviction based on the Family Court's failure to consider the parental discipline defense, we do not reverse the conviction and bar reprosecution, but remand the case for a new trial.

III.

Barawis argues that the Family Court erred in excluding certain evidence of household rules that she claims was relevant to her parental discipline defense. We note that the existence of household rules, whether the CW had violated those rules, and what disciplinary attempts were previously made to enforce those rules could be relevant to whether the use of force was justifiable under HRS § 703-309(1). See Tanielu, 82 Hawai'i at 381, 922 P.2d at 994. In this case, the defense did not make a proffer of what evidence it expected to elicit through its

questions.   Therefore, it is difficult to determine whether the Family Court erred in excluding the evidence.   In any event, in light of our decision to vacate Barawis' conviction and remand the case for a new trial, we need not address this point of error.

CONCLUSION

Based on the foregoing, we vacate the Family Court's Judgment, and we remand the case for a new trial.

DATED: Honolulu, Hawai'i, February 2, 2018.

On the arguments:

Teri M. Wright
Deputy Public Defender
for Defendant-Appellant

David Blancett-Maddock
Dale Yamada Ross (on the briefs)
Deputy Prosecuting Attorneys
County of Hawai'i
for Plaintiff-Appellee

Craig H. Nakamura
Chief Judge

Associate Judge

Associate Judge

10